## No. 7833.

### W. S. BENEDICT ET AL., EXECUTORS, VS. THOMPSON & TORJUSEN.

A partnership between stevedores is not a commercial, but only an ordinary, partnership, and parties taking the promissory note of such a firm, do it at their peril, if the partner who issued the note, had no authority from his co-partner to do so.

APPEAL from the Fifth District Court, parish of Orleans.  *Rogers,* J.

*Chs. F. Hornor* for Plaintiffs and Appellees.

*A. J. Lewis* for Defendant and Appellant.

The opinion of the Court was delivered by

POCHÉ, J.  Plaintiffs, testamentary executors of the estate of R. Y. Charmbury, seek to recover of defendants in solido the sum of $3400, amount of several promissory notes, dated January and February 1879, alleged to have been executed by defendants, composing together a commercial partnership.

The defendants filed separate answers.

Torjusen set up the plea of payment.

Thompson filed a general denial, followed by a special denial of any partnership with Torjusen at the date of the notes, denying that he ever participated in, or in any manner authorized the execution of said notes, or that he had any knowledge of them, or was in any manner benefited by them.

The judgment of the lower court condemned the defendants jointly, and Thompson alone appeals.

The important question to solve is whether there was any partnership or not.  The evidence shows that the defendants were engaged in the business of loading and unloading vessels at the port of New Orleans, a class of men commonly known as stevedores.

If any partnership existed between them it was evidently an ordinary and not a commercial partnership.  It has been held that architects and ship carpenters, when associated together, were ordinary partners. 2 An. 623; 6 An. 423; 15 L. 152.

It is clear that persons engaged in the pursuit of loading and unloading vessels, cannot, when associated, be classed otherwise than ordinary partners.

The evidence further shows that in the year 1874 the defendants had contracted a partnership as stevedores, under the name and style of Thompson & Torjusen, and that this partnership had lasted two years.

After that time, the parties continued to work together, but the evidence is conflicting as to what were their relations from that time to the date of the execution of the notes in suit.

Only three witnesses testified in the case; and their testimony, when well analyzed and carefully weighed and compared, fails to satisfy us that the defendants were partners at the time of the execution of the notes.

It is uncontested that Torjusen had no means, and that even during the partnership, from 1874 to 1876, all the funds and the tools necessary to the trade were furnished exclusively by Thompson.

And we are satisfied that from the year 1876 to 1879 Torjusen was merely an employee of Thompson, and that for his compensation he received a share of the profits, but was not liable for losses, and that, therefore, there was no partnership, and that Thompson cannot be held liable for the loans which Torjusen made, or for the notes which he executed, even if he used the former partnership's name and style. We are satisfied that the funds borrowed were not used by Thompson personally, nor for the use of his business, and that the loan was made and the notes executed without his knowledge, authority or consent. Torjusen himself, the only witness who affirms the existence of the partnership at the time of the execution of the notes, admits that some of the funds borrowed were used for his personal wants or enterprise. In fact, his testimony, even if not contradicted by the other witnesses, would fail to prove any partnership between Thompson and himself.

Parties dealing with members of an ordinary partnership must be on their guard, as the right to use the partnership's signature is not vested in any one partner unless specially conferred. It was, therefore, the duty of Charmbury, not only to inquire at his peril as to the continued existence of the former partnership between the defendants, but also as to the authority under the contract of Torjusen to bind his partner. 5 M. 684; 1 L. 390; 1 R. 62.

It is not shown that Charmbury had ever dealt with the old firm of Thompson & Torjusen, or had had any business transactions with Thompson. The first money loaned by him to Torjusen was in January, 1878, more than a year after the dissolution of the firm.

As plaintiffs seek to hold the defendants as partners, it was incumbent upon them to prove the alleged partnership, and as they failed to do so, they cannot recover from Thompson.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be amended in so far as it condemns Thompson jointly with Torjusen; that plaintiffs' demand be rejected at their costs as against Thompson, and that the judgment appealed from be affirmed in all other respects.

The Chief Justice recuses himself, having been of counsel in the succession of Charmbury.