JOHN HARRIS *vs.* THE MAYOR AND CITY COUNCIL OF
BALTIMORE.

*Partnership—Implied authority—Power of Partners to Bind
the Firm.*

A partnership formed for taking and executing contracts for
paving and curbing the streets of a city, is not a trading or com-
merical partnership, and the individual members have no implied
authority to borrow money and give notes therefor to bind the
firm, or to pledge the assets of the partnership as collateral
security for money borrowed, in the absence of proof to show
the actual necessity or usage for the exercise of such power by
the individual members of the firm in conducting the work.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First Exception.*—The plaintiff offered to prove that
William R. Weaver conducted a separate business of
his own under the name of William R. Weaver & Co.,
during the year 1887, and a number of years previously,
and that all notes and contracts which were made and
used by Weaver in the prosecution of his separate busi-
ness were signed "Wm. R. Weaver & Co.;" that this
separate business was that of civil engineer, pile-driver,
and general contractor; and that Charles H. Harris had
no connection whatever with Weaver in anything except
the paving and grading business. This offer of proof
the defendant objected to, and the Court (PHELPS, J.,)
sustained the objection. The plaintiff excepted.

*Second Exception.*—The plaintiff offered to prove that
Weaver and Charles. H. Harris, in their paving busi-
ness, had an understanding with the plaintiff, that he

would furnish all the materials and money which they might need in the prosecution of their business, and that for this reason they never had occasion to borrow any money, except from him; and that Charles H. Harris had no knowledge of the transactions with the Farmers and Planters' Bank, under which Weaver procured nine thousand dollars from the bank; and that he never authorized or assented to the giving of the notes or assignments, and that the money was applied to the individual purposes and advantage of Weaver; and that apart from the two notes in question no promissory note or negotiable instrument was ever given by the paving partnership of Wm. R. Weaver & Co. The defendant objected to the admission of this proof, and the Court sustained the objection. The plaintiff excepted.

The plaintiff moved the Court to strike out all the evidence of the witnesses, Robb and Thomas, in respect to their understanding or opinion as to what was the legal liability or obligation incurred by the defendant, from the fact of having accepted or made entries of the service of notice of the assignments referred to in the evidence.

The plaintiff moved to strike out all the oral testimony of Mr. Pratt, in respect to the transaction between William R. Weaver and the National Farmers and Planters' Bank, so far as the same contradicts or varies from the said transaction, as shown by the two notes and collateral assignments offered in evidence.

*Third Exception.*—The plaintiff offered the seven following prayers:

1. That if the jury believe from the evidence that William R. Weaver and Charles H. Harris carried on as partners the business of street pavers in the City of Baltimore, under the name of William R. Weaver & Co., and that they were the contractors for grading and paving the three streets mentioned in the assignment of

January 26th, 1888, which has been offered in evidence, and that under the contracts offered in evidence, relating to said three streets, and mentioned in said assignment, there was due and payable by defendant on the 27th of January, 1888, or became due and payable before the institution of this suit, the sum of $11,113.48; and shall further find that on the 26th day of January, 1888, there was due to the plaintiff by said Weaver and Harris, for material furnished, and for the wages of laborers advanced in and about the work of grading and paving under the contracts in evidence for said three streets, the sum of $13,970.91, and that the said Weaver and Harris executed and delivered to plaintiff the said assignment offered in evidence, and that the plaintiff gave notice to defendant of the same on January 27th, 1888, and that $9,000 of the moneys due and payable by the defendant as aforesaid has not been paid to the plaintiff; and shall further find that the two notes and collateral assignments offered in evidence in favor of the National Farmers and Planters' Bank, signed Wm. R. Weaver & Co., were all and each of them signed and delivered by said Weaver, and without the knowledge or assent of said Charles H. Harris, and that no part of the money procured, as testified thereon by said Weaver, was needed for the work on any of said three streets, or for any partnership purpose, and that no part thereof was expended thereon, then the said Weaver had no authority to execute said notes or assignments in the name of the firm, and the plaintiff is entitled to recover, unless the jury further find from the evidence that it is the common custom or usage of partnerships engaged in the business of paving in the City of Baltimore, to bind the firm by promissory notes or other negotiable instruments, or that the necessity for binding such partnership by promissory notes or other negotiable paper is such that the business of paving cannot otherwise be duly transacted.

2. That the custom or usage referred to in the first prayer, means a custom or usage so fixed and established as that it is followed generally by all persons engaged in the business of paving in the City of Baltimore.

3. That the necessity of having capital or credit, or of incurring liabilities, does not of itself create the necessity referred to in the first prayer in respect to binding paving partnerships by promissory notes or other negotiable instruments, nor give to one partner in a paving partnership the right to give partnership notes in the name of the firm.

4. That if the jury find that the whole business of paving consists in procuring the stone, sand or other material that may be necessary, together with the necessary tools, and then doing the work of grading the ground and laying the material, and find that the business carried on by said Weaver and Charles H. Harris, as partners, was the paving business and no other, then the jury is instructed that their said paving partnership was not a trading or commercial partnership; and if they further find that the two notes offered in evidence were signed by said Weaver in the name of the firm, and that the two assignments to the bank were given as collateral for said notes respectively, then the *onus* is on the defendant to show either that it is the common custom or usage of persons engaged in the paving business in Baltimore City to bind themselves by promissory notes or other negotiable instruments, or that doing so is necessary to the due transaction of such business, or that the said Charles H. Harris authorized or consented to the giving of said notes and assignments, or afterwards ratified the same, or that the proceeds of said notes were applied to the purposes of said firm's business, and there is no legally sufficient evidence of any of the conditions above set forth as to the *onus*, and the payment set up by the defendant to the National Farmers and Planters'

Bank was not authorized, and is not a sufficient defence to this suit.

5. That if the jury find that the negotiation testified to on behalf of defendant, were between said Farmers and Planters' Bank and William R. Weaver, trading as William R. Weaver & Co., and not with William R. Weaver as a member of the firm referred to, composed of William R. Weaver and Charles H. Harris, trading under the name of Wm. R. Weaver & Co., and that the moneys referred to were borrowed by said Weaver, trading as Wm. R. Weaver & Co., and so lent to him and not to said firm, and that the notes referred to were signed by said Weaver, trading as William R. Weaver & Co., then the said Weaver, without the consent or authority of said Charles H. Harris, had no right to assign, as collateral for said notes, any claim belonging to the firm of said Wm. R. Weaver & Co.

6. That the transactions testified to between William R. Weaver and the National Farmers and Planters' Bank are determined by the writings offered in evidence, to wit, the two notes and collateral assignments, and that the said transactions were the ordinary banking transactions of lending money on note and taking collateral security for the payment thereof, and the jury should disregard all oral testimony by the witness, Mr. Pratt, which contradicts or varies said transactions as determined by said writings.

7. That in accepting service of notice of the assignment referred to, or in assenting to the same, the defendant did not incur any absolute liability to pay the moneys mentioned therein.

The defendant offered the following prayer:

If the jury shall find from the evidence that the written assignments dated November 11th, 1887, and December 1st, 1887, were signed by William R. Weaver, and the said William R. Weaver is the same person

mentioned in the written contracts between the firm of William R. Weaver & Company, and the Mayor and City Council of Baltimore, for the grading, paving and kerbing of North avenue, Orleans street and Hoffman street, offered in evidence by the plaintiff, and that said assignments were, respectively, on the 12th of November and the 1st of December, 1887, assented to on behalf of the Mayor and City Council of Baltimore by the City Register in accordance with a custom theretofore established, and prevailing in the office of the City Register, and that the sum of five thousand ($5,000) dollars, mentioned in the assignment, dated November 11th, 1887, and the sum of four thousand ($4,000) dollars, mentioned in the assignment of December 1st, 1887, were, on November 11th and December 2nd, 1887, respectively, by said bank paid to the said William R. Weaver, at the time of the delivery to it of said assignments respectively, and on the faith and security thereof; and that at the times mentioned in the evidence, and before the institution of this suit, the said respective sums were, under the said respective assignments, paid by the defendant to the said bank out of the money coming due by the defendant to the firm of William R. Weaver & Company, under the grading and paving contracts therein respectively referred to, and that all the remainder of said money, due thereunder to said firm, was, before the institution of this suit, paid to the plaintiff under the assignment dated January 26th, 1888, offered in evidence, then the verdict of the jury must be for the defendant.

The plaintiff specially excepted to the defendant's prayer as follows:

1. Because there is no legally sufficient evidence that the defendant assented to said assignments.

2. Because the use of the term "assented to" is calculated to mislead the jury, and submits to them the question of law as to whether or not the city, in accept-

ing service of said assignments, assumed any legal lia-
bility or not.

The Court overruled the said two motions of the
plaintiff, and rejected his prayers, and granted the
prayer of the defendant. The plaintiff excepted, and
the verdict and judgment being against him, this appeal
was taken.

The cause was argued before ALVEY, C. J., MILLER,
IRVING, and BRYAN, J., and was subsequently re-argued
on notes, and submitted to ALVEY, C. J., MILLER, ROBIN-
SON, IRVING, BRYAN, FOWLER, and BRISCOE, J.

*Albert Ritchie,* for the appellant.

*Bernard Carter, City Solicitor,* for the appellee.

*William A. Hammond,* who had succeeded Mr. Carter
in the office of City Solicitor, filed a brief for the ap-
pellee under the order for a re-argument.

ALVEY, C. J., delivered the opinion of the Court.

This case has been re-argued, and upon reconsidera-
tion the majority of the Court are decidedly of opinion
that the judgment of the Court below ought to be re-
versed, instead of being affirmed, as was done upon the
first argument.

The action was brought by the plaintiff, the present
appellant, as assignee of William R. Weaver and Charles
H. Harris, contractors for and doing the work of paving
and curbing of streets, in the City of Baltimore, in the
partnership name of William R. Weaver and Company,
against the Mayor and City Council of Baltimore, to re-
cover a balance of $9,000, alleged to be due the assignors
on contracts executed by them, and which was by said
contractors assigned to the plaintiff. The city occupies

the position of a mere stake-holder, and defends for the National Farmers and Planters' Bank of Baltimore, that bank claiming, and having received, the fund under a prior assignment to that made to the plaintiff,—the bank having indemnified the city against the result of this suit.

The plaintiff was defeated in his right to recover, upon the application of the general principle in the law of partnership that applies in cases of trading or commercial partnerships, but not in cases of non-trading partnerships. Hence Weaver as partner was held by the Court to be general agent of the firm, with power, *by implication*, to act for and bind the firm in all matters as fully as a trading partner could do, including the power to borrow money, to make and pass promissory notes, and to pledge the assets of the partnership as collateral security for money borrowed, even though it was without the knowledge of his co-partner, and the money was in fact applied to his own use. This is the principle of the instruction given by the Court to the jury, at the instance of the defendant, and it is also the principle of the ruling of the Court on the proffer of evidence by the plaintiff, as set out in the second bill of exception. In both of these rulings we think there was error.

The partnership here is not claimed or asserted to be a trading or commercial partnership in any proper sense of the term; nor is there any the least pretence to assert that there was any express authority from the co-partner Harris to Weaver to borrow the money of the bank, and to make and pass the promissory notes of the firm, payable to the bank or order, and at the same time to pledge by assignment the assets of the firm as collateral security for the money thus borrowed; nor is there any pretence to say that those acts of Weaver were ever ratified by Harris. But the defendant relies alone upon an implied authority, supposed to result from the relation of

the partner and what is asserted to be the necessity of
the business.    There was no proof, however, of the man-
ner of conducting the business, nor as to any necessity
for the exercise of power to borrow money to carry it on,
nor as to any custom or usage in the manner of raising
funds for the due prosecution of the work under con-
tracts such as those made and performed by this firm.
No such question was put to the jury; but the Court
simply assumed as matter of law that there was, in such
cases, an actual necessity for the exercise of the power
to borrow money to enable the firm to perform the con-
tracts, and therefore there was authority, by implication,
in each of the partners to borrow money, make notes,
and pledge the property of the partnership as collateral
security, in the name and on account of the firm.    This
we do not understand to be the law, in regard to part-
nerships of the character of the one in question.    The
text writers of the highest authority, as do also many
decided cases, maintain a doctrine directly the reverse.

In *Story on Partnership*, sec. 102 *a*, the learned author,
after stating the general principle applicable to trading
or commercial partnerships, goes on to say, that "we are
to understand that this doctrine is not applicable to all
kinds of partnerships, but is generally limited to part-
nerships in trade and commerce, for in such cases it is
the usual course of mercantile transactions, and grows
out of the general custom and laws of merchants, which
is a part of the common law, and is recognized as such.
But the same reason does not apply, or at least may not
apply, to other partnerships, unless indeed it is the com-
mon custom or usage of such business to bind the firm
by negotiable instruments, or it is necessary for the due
transaction thereof."

And so in 1 *Lindley on Partnership*, sec. 130, (*Ewell's
Ed.*) it is laid down as the settled law, that "One partner
in a non-trading partnership cannot bind his copartner

by a bill or note drawn, accepted or endorsed by him in the firm name, even though it be for a debt of the firm, unless either he has express authority therefor from his copartner, or the giving of such instruments is necessary to the carrying on of the partnership business, or is usual in similar partnerships; and the burden is upon the party suing on such note or bill to prove such authority, necessity or usage." See Note 1, and cases there cited, on same page.

There are other text writers of high authority, to whom reference could be made, who have been equally explicit in noting the distinction between the powers of a partner in a trading or commercial partnership, and the powers of a partner in a non-trading partnership ; but it is unnecessary to cite them.

The qualification of the general principle thus stated by the text writers is fully supported by the decisions ; as will appear by an examination of the cases of *Dickinson vs. Valpy*, 10 *Barn. & Cr.*, 128; *Brown vs. Byers*, 16 *Mees. & W.*, 252; *Brettel vs. Williams*, 4 *Exch.*, 623; *Smith vs. Sloan*, 37 *Wis.*, 285; *Davis vs. Richardson, et al.*, 45 *Miss.*, 499; *Pease vs. Cole*, 53 *Conn.*, 53, and many other cases, some of which are referred to in the brief of the counsel for the plaintiff.

In the leading case of *Dickinson and Valpy, supra,* a copartnership formed to purchase and operate mines, and where the question was, whether the copartners were liable on an instrument drawn by a member, in the name of the company, and in the form of a bill of exchange, but which the Court held to be in effect a promissory note, it was held to be incumbent on the plaintiff to prove that a member of the company had authority to bind other members by the making of such an instrument; and the plaintiff having failed to give evidence to show that it was necessary, for the purpose of carrying on the business of that mining company, or usual for

other mining companies to draw or accept bills of exchange, or make promissory notes, the plaintiff was not allowed to recover. And Mr. Justice LITTLEDALE, concurring with the rest of the Court, in the course of his opinion, said : "Evidence of the nature of the company ought to have been given, to show that, in order to carry into effect the purposes for which it was instituted, it was necessary that individual members should have the power of binding the others by drawing and accepting bills of exchange. In the absence of any such evidence; I am of opinion that it is not competent to individual members of a mining company (which is not a regular trading company), to bind the rest by drawing or accepting bills." And in the case of *Brettel vs. Williams, supra,* where persons were partners as railway contractors, and had contracted to do certain works, and there was a sub-contract for the doing of part of the work, for the doing of which coals were required to make brick, it was held that one of the partners had no authority to guarantee, in the name of the firm, payment for coals to be furnished to those with whom the firm had contracted for making the bricks ; there being no evidence that the guarantee was necessary for carrying into effect the contract of the firm. In that case Mr. Baron PARKE, in the course of a carefully considered opinion for the whole Court, after referring to some previous cases, said: "In the present case, no evidence was given to show the usage of the defendants in this particular business, or of others in a similar business ; nor was there any evidence of the sanction by the other defendants of the act of their copartner ; for a witness, who was called to prove the latter fact, would not, on cross-examination, swear that he was authorized by them to write a letter, which, if proved to have been so written, would have been sufficient. *Simply as railway contractors, they could not have any such power.*" And it would therefore seem

to be very clear, that if partnerships formed for operating mines, to construct railways, and, as shown by the cases, for farming, for hotel keeping, for conducting theatres, and the like, are not to be regarded as in the class of trading or commercial partnerships, for the same reason partnerships formed for taking and executing paving and curbing contracts are not, *per se*, in such class ; and therefore there is no implied authority in the members to borrow money and make promissory notes therefor to bind the firm, unless there be proof to show the actual necessity or usage for the exercise of such power by the individual members of the firm, in conducting the work.    See case of *Kimbno vs. Bullitt, et al.*, 22 *How.*, 256.

The bank had knowledge of the nature of the partnership; that was disclosed on the face of the transactions by which the money was obtained by Weaver.    And with that knowledge it was its duty to inquire as to the authority of Weaver to make the notes and assignments; and failing to make such inquiry it took the notes and collateral security at its peril. *Cocke vs. The Branch Bank at Mobile*, 3 *Ala.*, 175; *Judge vs. Braswell*, 13 *Bush*, 67; *Pooley, Barnum & Co. vs. Whitmore*, 10 *Heisk.*, 629; *Benedict, et al. vs. Thompson & Torjusen*, 33 *La. Ann.*, 196.

The notes constitute the primary claim of the bank, and the assignments are only collateral and subsidiary to the principal debt.    If the notes were made without authority, and not therefore binding on the firm, the assignments, which by express terms are only intended as collateral security for the notes, would, upon the authorities, equally fail to bind the firm.    But the assignments would be good and effective to bind and transfer any interest of Weaver in the claims against the city, after payment of partnership debts and liabilities, but to that extent only.    It would appear, however, that

there is no such interest upon which the assignments can operate.

In our opinion the Court below should have ruled in the testimony offered by the plaintiff in the second exception, and should have rejected the prayer of the defendant, and granted the first and fourth prayers of the plaintiff; and therefore the judgment ought to be reversed.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 1st July, 1890.)

On the first argument of this case the opinion of the Court was delivered by BRYAN, J., as follows:

William R. Weaver and Charles H. Harris, under the firm name of William R. Weaver & Co., were copartners engaged in the business of paving, grading, and curbing streets. In the course of their business they had made contracts with the Mayor and City Council of Baltimore for paving, grading, and curbing certain portions of North avenue, Orleans street and Hoffman street; all within the limits of the City of Baltimore. And it was stipulated in the contract for each street that no money should be paid for such street until the work to be done on it was completed and accepted by the city. On the eleventh day of November, eighteen hundred and eighty-seven, Weaver applied to the National Farmers and Planters' Bank of Baltimore for a loan of five thousand dollars; and on the first day of December of the same year, he applied for another loan of four thousand dollars. Both of these applications were made before the work on any of these streets had been completed; and no money was due and payable for any portion of the work before the thirty-first day of January, eighteen hundred and eighty-eight. We will state the effect of the evidence

in relation to these loans; hardly considering it necessary to premise that as a matter of course its credibility was exclusively for the consideration of the jury.   Weaver applied for the loan of five thousand dollars to assist in paving Hoffman and Orleans streets; the Bank declined to loan the money until he made an assignment of a portion of his claim against the city for this work equal to the amount of the loan, and thereupon Weaver executed and delivered to it the required instrument. This assignment was in the handwriting of the Deputy Register of the City of Baltimore, and was witnessed by him; and at the bottom of it, there was this statement signed, John A. Robb, Register, viz.; "Presented at this office November 12th, 1887." Thereupon the Bank loaned the money, payable ninety days after date, taking from Weaver a paper signed W. R. Weaver & Co., stating that they promised to pay to the Bank or order the sum loaned, at the time appointed for payment, and that they had deposited with the Bank, as collateral security for the loan, their claim against the Mayor and City Council of Baltimore for five thousand dollars, transferred "to favor National Farmers and Planters' Bank" A memorandum of the assignment was made in a book kept in the Register's office, which is spoken of in the testimony as a record of the assignments made by contractors; and the evidence of the Register and Deputy Register is perfectly distinct that their object and purpose in what they did in connection with this instrument, was to enable Weaver to borrow money on the faith and credit of it, and moreover that their action was in accordance with the long established usage and practice of the Register's Office.   We will quote only a small portion of the testimony on this point.   The Register having testified that he assented to the assignment, when it was presented to him on the day of its date, and that it was with the object of satisfying the President of the Bank that it

had been presented to the city and that the city had no interest in the assignment, was asked as to the usage of the Register's office in reference to assenting to assignments made by contractors for portions of funds coming to them for work done the city. He replied "We always accepted the assignments, that is on a certificate like that was, we always accepted them and took a memorandum of them; I felt bound of course to regard them; I felt myself bound to do it; if there was money due to the contractor to cover the amounts of the assignment I would pay it to the assignee." And he further testified that when the money was due the contractor, if there was enough to answer the assignment, he considered that the city had agreed to pay it to the assignee. The evidence of the President of the Bank is distinct that the loan was made exclusively on the faith of the assignment. On the second day of December, eighteen hundred and eighty-seven, the Bank loaned Weaver four thousand dollars, payable sixty days after date and received from him a paper signed Wm. R. Weaver & Co., promising to pay the amount to the Bank or order at the appointed time, and stating that they had deposited with the Bank as collateral security for the loan, Baltimore City contracts for four thousand dollars, "made over to favor National Farmers and Planters' Bank." This loan was made to assist in paving a portion of North avenue, and he executed and delivered to the Bank an assignment of four thousand dollars of its claim against the city for work done and to be done on North avenue. The evidence in respect to this assignment is similar in all respects to that regarding the other.

On the twenty-sixth day of January, eighteen hundred and eighty-eight, Weaver and Harris, by an instrument executed by both of them, assigned to John Harris their entire claim against the City of Baltimore for work done on North avenue, Orleans street and Hoffman street.

Notice of this assignment was given to the Register of the city, and a memorandum of it made in the book above referred to; and the attorney of John Harris also served notices on the Register and the Mayor of the city, forbidding the payment of any money to the Farmers and Planters' Bank under the assignments above mentioned. The city having first taken a bond of indemnity, paid the Bank nine thousand dollars and paid to John Harris, the residue of the amount due on the claim of Weaver & Co. This suit is brought by John Harris, against the Mayor and City Council of Baltimore to recover this sum of nine thousand dollars with interest.

The business of paving, grading and curbing streets in the City of Baltimore necessarily requires the use of a large amount of money. As by the city ordinances the work cannot be paid for until it is completed, and accepted by the proper city authorities, it would be a natural and usual incident in the course of the business to provide funds for the payment of constantly accruing expenses. Materials and implements for work must be purchased, and the wages of laborers must be paid at short intervals. The partners must have foreseen the reasonable probability that they would find it necessary to meet these incessant demands by borrowing money. Their operations might be very much embarrassed and perhaps entirely frustrated without the exercise of so salutary a power. With money in the hands of the city which must be payable to them at a future time, and of which they can receive the benefit at once, by pledging it as collateral security for a loan, it would be very unwise if they did not provide for the exigencies of their business by using such a ready source of supply. It seems to us that the power to borrow money is involved in the ordinary prosecution of such a business, and that it comes within the principle so tersely stated by *Lindley*

in his work *on Partnership:* "Every member of an ordinary partnership is its general agent for the transaction of its business in the ordinary way, and the firm is responsible for whatever is done by any of the partners when acting for the firm within the limits of the authority conferred by the nature of the business it carries on. Whatever, as between the partners themselves, may be the limits set to each other's authority, every person not acquainted with those limits is entitled to assume that each partner is empowered to do for the firm whatever is necessary for the transaction of its business, in the way in which that business is ordinarily carried on by other people." *Vol.* 1,. *m. p.* 124. "The question whether a given act can or cannot be said to be necessary to the transaction of a business in the way in which it is usually carried on, must evidently be determined by the nature of the business, and by the practice of persons engaged it." *Vol.* 1, *m. p.* 127. "The question, therefore, can one partner bind the firm by accepting bills in its name? admits of no general answer; the nature of the business and the practice of those who carry it on (usage or custom of the trade,) must be known before any answer can be given." *Vol.* 1, *m. p.* 128. It will be seen that we think that Weaver had a right to borrow money in the name of the firm, and to give a promissory note for the payment of it. The transaction being within the scope of the business of the partnership, the lender of the money, acting *bona fide*, is not responsible for any subsequent misapplication of it by the borrowing partner, or for any other fraud on his part. *Story on Partnership, sections* 105 and 128. If the lender had notice that he was acting in violation of the rights of the other partner, he could not hold the defrauded partner to the payment; but in this case there is no evidence whatever of such notice. The assignments have the signature of the partnership name, and

a seal is attached to the signature. This must be regarded as the individual seal of Weaver. *Herzog vs. Sawyer,* 61 *Md.,* 351. But the right of one partner to sell the partnership property, or to pledge it for a debt of the firm is well established. *Lindley on Partnership, m. p.* 139. Although the singular number is incongruously used once in each of these assignments, it is abundantly clear that the subject assigned was the claim of the partnership against the city for paving, grading and curbing. An assignment of merely a portion of the amount due by the city, would, if valid, subject it to the demands of two different creditors instead of one. A creditor cannot split up and divide his claim without the consent of the debtor; but, if the debtor consents to such a partition of it, the right of the assignee is protected. *Wilson & Co. vs. Carson & Co.,* 12 *Md.,* 54.

The offers of evidence in the first and second exceptions were properly rejected. If there had been an offer to prove fraud or collusion with Weaver on the part of the Bank, or knowledge that he was acting in violation of his duties to his co-partners, the evidence would have been competent. But this suggestion was not embraced in either of the offers. The motion to strike out portions of the evidence of the Register and Deputy Register was properly refused. Their testimony rightly considered did not tend to prove legal opinions; but was intended to show, and was competent to show that their acts in reference to the assignments manifested their assent to them, and that this assent was in accordance with the custom and practice of the Register's office. The motion to strike out portions of the testimony of Mr. Pratt, the president of the Bank, was also properly overruled. It was clearly competent to show by parol evidence that the money was loaned to Weaver for partnership purposes, and that the loans were made exclusively on the faith and credit of the assignments of the partnership claim against the city.

Our conclusion upon the whole case is that the questions at issue were properly stated to the jury by the defendant's prayer, and that all the propositions of the plaintiff were properly rejected.


Upon the re-argument of the case Judge BRYAN delivered the following dissenting opinion :

I desire to add something to the opinion delivered on the first argument of this case.  The majority of the Court decide that the firm of William R. Weaver & Co. is not to be regarded as belonging to the class of trading or commercial partnerships, and that therefore there was no implied authority in Weaver to bind the firm by borrowing money, or making promissory notes in the absence of proof to show actual necessity for the exercise of such power, or a usage authorizing it.  The principles which determine the powers of partners are the same in all partnerships.  They may lawfully do whatever is within the contemplation of the contract of partnership. They associate together for the purpose of conducting business for their joint benefit, and they mutually entrust each other with the power of prosecuting this business in the ordinary way.    Of course, I do not allude to cases where their powers are limited by express agreement with each other.   The powers of the members of different partnerships are different, because the ends and objects and exigencies of the partnerships are different, and for no other reason. There is no line of demarcation between trading and non-trading partnerships, so far as the principle of law is concerned, by which the powers of the partners are ascertained and determined. The passage cited in the opinion of the majority of the Court from *Lindley on Partnership* is not from the text of the learned author ; but it is from the notes of the American editor.    The author's own opinion is not

stated so broadly, as may be seen from the text which is the subject of the Editor's annotation. I here quote it: "With respect to partnerships which are not trading partnerships, the question, whether one partner has any implied authority to bind his copartners by putting the name of the firm to a negotiable instrument, depends upon the nature of the partnership. In the absence of evidence showing necessity or usage, the power has been denied to one of several mining adventurers; quarry workers; farmers; solicitors." Page 130, bottom page 302. *Brown vs. Byers* and *Dickinson vs. Valpy,* which are cited in the opinion of the majority, are also cited by Lindley in support of his text. On page 132 (bottom page 313) he says "the power of borrowing money, like every other implied power of a partner only exists, where it is necessary for the transaction of the partnership business in the ordinary way," and in stating when a partner cannot borrow money on the credit of the firm, he mentions cases "where the business is such as is customarily carried on, on ready money principles, *e. g.* mining on the cost book principle; or without borrowing, as in the case of solicitors;" but he does not mention non-trading partnerships. And the reason is obvious; it is because members of all firms, trading or non-trading, have the power "to do for the firm whatever is necessary for the transaction of its business, in the way in which that business is ordinarily carried on by other people" *Lindley on Partnership,* 124 *top page.* And in determining the powers of partners, the inquiry must always be directed to this point. It is true, as stated by Judge STORY, in the passage quoted in the opinion of the majority from his work on *Partnership,* that the power to bind the firm by negotiable instruments "is generally limited to partnerships in trade and commerce." It is *generally* limited to these partnerships, because they have the most frequent occasions to borrow money to carry on their business; but

there is no reason wherefore it should not extend to partnerships of other descriptions, which require the same facilities.     And the passage in Story, succeeding that quoted by the Court, shows that in the opinion of the learned author, they are not excepted.     The passage is as follows: "But the same reason does not apply, or at least may not apply to other partnerships, unless indeed it is the common custom or usage of such business to bind the firm by negotiable instruments; or it is necessary for the due transaction thereof."     And in *Dickinson vs. Valpy,* the leading case so often quoted as establishing a contrary doctrine, PARKE, Judge, said " Now, undoubtedly, if there is a complete partnership between two or more persons, one partner does communicate to the other standing in the relation of complete partner, all authorities necessary for carrying on the partnership, and all the authorities usually exercised by partners in the course of that dealing in which they are engaged." 10 *Barnewall and Cresswell,* 140. In apt illustration of this principle we may quote the Supreme Court of Pennsylvania: "In all contracts concerning negotiable paper, the act of one partner binds all; and there is no distinction in principle upon this point between general and special partnerships.     One partner may borrow money for the partnership, and give notes and other negotiable securities therefor in the name of the firm ; and the partnership is liable for money borrowed by one of its members on the credit of the firm, within the general scope of its authority and according to the usual course of its business. But, while it is conceded that this is the law as applicable to commercial partnerships, it is insisted that it does not apply to partnerships formed for mechanical or manufacturing purposes.     But no such distinction is suggested or recognized in any of the adjudicated cases or text books; and there is no foundation for it in the necessities or usages of these partnerships.

The necessity for borrowing money to carry on the business of a manufacturing partnership may be as great as it is in order to carry on the business of one that is strictly commercial; and common observation and experience show that it is equally the custom and usage of manufacturing, as of commercial partnerships, to borrow money to enable them to conduct their business." *Hoskinson vs. Eliot*, 62 *Pennsylvania*, 401.

The business of paving and grading streets is as well recognized as any other conducted in the City of Baltimore. It is of great extent; it is estimated there are within the city five hundred miles of paved streets, and the number is constantly increasing, and they are continually needing repairs. As I endeavored to show in my former opinion, this business requires unceasing expenditure of money. The Court cannot shut its eyes to the established course of business in large commercial cities. Manufacturers, builders, contractors, stockbrokers and many others are obliged from the very nature of their ordinary business to have bank facilities, equally with merchants. In *Porter vs. White*, 39 *Md.*, 613, the question was whether printers engaged in business in the City of Baltimore came within this class. The Court decided that the managing partner of a firm of printers could borrow money, and endorse notes for the firm without showing express authority for that purpose from his copartner, and assigned as the reason, that "such authority would be implied from the existence of the partnership, and *the nature of its business.*" The distinction between the powers of partners in trade and these partners in paving and grading seems to be very attenuated and unsubstantial; more especially, when we see that in the bond which they gave to the city to secure the performance of their paving contract, they described themselves as "*trading* under the firm of W. R. Weaver & Co." If I understand the opinion of the majority of the Court, the judg-

ment in this case is reversed because they are not a *trading* partnership.

(Filed 12th December, 1890.)