## SCHELE v. WAGNER, ADMINISTRATOR.

[No. 20,335.   Filed May 24, 1904.]

DECEDENTS' ESTATES.—*Claim.*—*Indorsement of Promissory Note.*—*Partnership.*—Where a claim is filed against the estate of one partner in a firm, on an indorsement of a promissory note by the firm, it must be proved either, (1) that such indorsement was within the apparent scope of the partnership business, or (2) that such practice was so frequent, open

Schele *v.* Wagner.

and general as to charge such deceased partner with knowledge thereof. *p. 22.*

PARTNERSHIP.—*Non-Trading.*—A partnership for the insurance, real estate, and loan brokerage business is of the non-trading class. *p. 23.*

PLEADING.—*Non est Factum.—Burden of Proof. — Evidence. —* By statute (§2479 Burns 1901), *non est factum* is a defense without being answered specially, and the burden is upon plaintiff to prove the execution of the indorsement, and where the evidence wholly fails to show either that decedent executed or knew of the execution of the indorsement of note in suit or of other indorsements of like character, no claim is made against such estate. *pp. 24, 25.*

From the Allen Circuit Court; *Edward O'Rourke,* Judge.

Claim filed by August Schele against Henry Wagner, as administrator 'of the estate of Claude F. Eme, deceased. From a judgment denying the claim, claimant appeals. Transferred from Appelate Court under §1337u Burns 1901. *Affirmed.*

*J. B. Harper,* for appellant.

*A. A. Purman, R. R. Purman, W. G. Colerick, Guy Colerick* and *K. C. Larwill,* for appellee.

HADLEY, J.—This action is based on a promissory note filed by appellant as a claim against the estate of Claude Eme, deceased, of which appellee is the administrator. The note purports to have been executed by Elizabeth Kanning to Eme & Son, a partnership composed of the decedent and his son Julius Eme, doing business as insurance, real estate, and loan brokers, and by said firm indorsed to appellant. Among other things, it is alleged in the complaint that a part of the business of the firm of Eme & Son was to secure loans for clients; that one of their methods in negotiating and securing loans was to cause the applicant for the loan to execute his promissory note payable to the order of said firm of Eme & Son, and the said firm would then indorse said note to the person making the loan; that said firm, through its junior member, Julius, presented to the plaintiff the promissory note sued on and

filed, purporting to have been executed by Elizabeth Kanning to the said firm, and requested the plaintiff to make a loan to Mrs. Kanning upon said note; that, believing said note to be genuine, and that the same had been executed by Mrs. Kanning for the purpose of securing a loan, as represented by said firm, he agreed to, and did, make said loan, and delivered to said firm in money the full amount called for by said note, whereupon said Julius, acting for said firm, and in pursuance of agreement, and within the authority and scope of the business of said firm, indorsed said note to the plaintiff by writing the firm name on the back thereof as follows: "Eme & Son." Appellee availed himself of the benefits of §2479 Burns 1901, and filed no answer. Trial by the court. Finding and judgment against appellant for costs.

The only assignment in this court is the overruling of the motion for a new trial. The insufficiency of the evidence is the only ground upon which a reversal is asked.

It is admitted that the name of Elizabeth Kanning, as maker of the note, was forged by Julius Eme, and that the counterfeit note was by him indorsed in the firm name to appellant, and that he received thereon in money the full face value.

The controversy involves two questions: (1) Was the indorsing of the note in suit by Julius Eme in the firm name within the apparent scope of the partnership business? And (2) if not within the scope of the business, is it sufficiently shown by the evidence that the practice by Julius was so frequent, general, and open as to charge the deceased partner with the knowledge that it was being done?

There can be no doubt of the general rule that where two or more persons engage as partners in a particular business, a transaction by one member of the firm within the scope of the business in which they are engaged will be presumed to be on the partnership account. *Porter* v.

*Wilson* (1887), 113 Ind. 350.   In determining the power
of one partner to bind his firm, regard must always be had
to the character of the business in which they are engaged.
To facilitate the inquiry, the law has divided partnerships
into two classes—trading, or commercial, and non-trading.
22 Am. & Eng. Ency. Law (2d ed.), 61, 62, and authorities
there collated.   The business of the former being to buy
and sell, each partner is presumed to be invested with au-
thority from his copartners to execute notes, bills of ex-
change, and such other evidences of credit, on the firm
account, as are usual and appropriate to such business.
*Schellenbeck* v. *Studebaker* (1895), 13 Ind. App. 437, 55
Am. St. 240, and cases cited.   But no such presumption op-
erates in a partnership of the non-trading class, which
holds itself out as engaged in an employment or occupa-
tion which does not necessarily or fittingly embrace buying
and selling, or a pledging of the firm's credit, unless it is
shown to be the common usage, or the business is of a
character to make the power essential to a proper trans-
action thereof. *Dowling* v. *Exchange Bank* (1891), 145 U.
S. 512, 12 Sup. Ct. 928, 36 L. Ed. 795; *Schellenbeck* v.
*Studebaker, supra,* and authorities cited on page 440.   A
partnership engaged in the insurance, real estate, and col-
lecting business, is of the non-commercial, or non-trading
class.   *Deardorf* v. *Thacher* (1883), 78 Mo. 128, 47 Am.
Rep. 95.   So, also, printers and publishers, contractors, liv-
ery-stable keepers, tavern keepers, farming, running a
threshing machine, etc.   See illustrations and authorities
collected in 22 Am. & Eng. Ency. Law (2d ed.), 63; *Bays*
v. *Conner* (1885), 105 Ind. 415; *Schellenbeck* v. *Stude-
baker, supra.*   In all such cases one partner has no implied
power to bind his copartners by executing or indorsing
notes in the firm name, even in payment of firm debts.
Such power can only arise from consent, ratification, cus-
tom, or necessity.

The partnership business of Eme & Son was that of insurance and loan brokers. There is nothing in the character of this business, when conducted according to the usual mode, that imports the necessity of pledging the partnership's credit by the execution and issuance of the firm's notes or indorsements. The ordinary business of the loan broker is to solicit borrowers and lenders, and to bring these together, for a commission, and the broker's indorsement of the borrower's paper is extraordinary and inconsistent with sound business principles. It must therefore be adjudged a non-trading or non-commercial partnership.

The business being non-commercial, and the execution and indorsement of promissory notes being unnecessary in carrying on the business, and unusual in like concerns, appellant had no right to presume that Julius Eme had authority to bind his father by indorsing the note in the firm name, and the burden rests upon him to prove the validity of the note against the decedent's estate. The generally recognized rule in such cases is clearly expressed in the well-considered case of *Smith* v. *Sloan* (1875), 37 Wis. 285, 19 Am. Rep. 757, in these words: "One partner in a non-trading partnership can not bind his copartner by a bill or note drawn, accepted or indorsed by him in the name of the firm, not even for a debt which the firm owes, unless he have express authority therefor from his copartner, or unless the giving of such instruments is necessary to the carrying on of the firm business, or is usual in similar partnership; and that the burden is upon the holder of the note who sues upon it, to prove such authority, necessity or usage."

In this case, for another reason, the burden rests upon the plaintiff to prove the authorized execution of the note. Since 1881, in a claim against a decedent's estate founded upon a written instrument, the administrator is entitled, without answer, to every defense, including that of *non*

*est factum,* except set-off or counterclaim.   §2479 Burns 1901; *Jennings* v. *McFadden* (1881), 80 Ind. 531; *Zeller* v. *Griffith* (1883), 89 Ind. 80; *Kennedy* v. *Graham* (1893), 9 Ind. App. 624.

Therefore, in considering the sufficiency of the evidence to support the finding, we must do so from the point of view that in supporting his claim the plaintiff is unaided by any presumption in his favor, and that, to recover, he must prove by a preponderance, by some of the methods above indicated, the due execution of the note by the decedent.   As we have seen, the nature of the loan brokerage business is such that the execution and indorsing of notes is not usual or necessary in conducting it, nor is it customary with partnerships engaged in like business.   To aid appellant, therefore, we must find consent or ratification established without conflict in the evidence.   There is no evidence, and it is not claimed, that the decedent ever gave his son express authority to execute or indorse promissory notes in the firm name; nor that the decedent ever employed the firm name for that purpose, nor that he had actual knowledge that his son had done so.   The most that is claimed is that the son indulged so frequently in the practice as to make it such a general custom of the office as would charge the decedent with constructive knowledge.   Touching this custom the testimony of the four witnesses who testified for appellant was indefinite, uncertain, and unsatisfactory.   It was shown that the son Julius was the principal "office man"—did the writing and kept the books.   The first and chief witness for appellant, and who had acted for the firm as a solicitor of loans for several years, testified to the firm's two methods of conducting loans set forth in the complaint; one being to place in his hands a note signed by the proposing borrower, and made payable to Eme & Son, and by them indorsed, to be delivered to the lender when found; the other, the ordinary method of bringing borrower and lender together.

But in all his transactions for the firm, which he testified were many, he was not able to point out a single instance of the former method that occurred in the lifetime of the elder Eme, and in all such business of the firm, which covered a period of eight years, the aggregate number of instances of the indorsement plan given by the witnesses does not exceed three, and each of them prepared, conducted, and closed by the young man who is now serving time in the penitentiary for forgery in one of them. There was abundant ground for the court to find that the indorsement plan was an exceptional contrivance of the son to serve his unlawful purposes, and wholly unknown to his father, and far from being a recognized custom of the partnership.

We find no error in the record. Judgment affirmed.