FRED J. SCHUMACHER, Appellant, v. THE SUMNER TELEPHONE COMPANY, M. ROBISH, ELIZABETH ROBISH, JOHN SAGER, ADOLPH GARNIER, E. N. JOHNSTON, CHRISTIAN LANG, ADAM LANG, JOHN WEISKIRCK, W. H. CREAGER, DANIEL PROBST and C. LANG, Appellees.

**Corporations:** NEGOTIABLE INSTRUMENTS: INDIVIDUAL LIABILITY:
1 BURDEN OF PROOF. The statute providing for individual liability of incorporators, because of failure to substantially comply with the statutory requirements regarding incorporation, does not apply to parties who, without attempting to incorporate or without assuming any corporate functions, adopt a trade name calling themselves a company; and in a suit upon a note executed in the name of the company the plaintiff has the burden of proving such facts as will establish an individual liability, to hold the individuals composing the company personably liable. In the instant case this burden is not sustained.

**Same:** VOLUNTARY ASSOCIATIONS: INDIVIDUAL LIABILITY OF MEMBERS.
2 A voluntary, unincorporated association for the purpose of conducting a business, is to some degree a partnership, even though the individual members never understood or believed that they had assumed such relations; and an individual member may be held liable for the contracts made by another member of the association, when made within the proper scope of the business for which they are associated, although he may have given no express consent.

**Partnerships:** TRADING AND NON-TRADING PARTNERSHIPS. A trading
3 partnership or association is one doing a business of buying or selling for profit, while those doing a business other than buying and selling goods or property are non-trading partnerships.

**Same:** NON-TRADING PARTNERSHIPS: INDIVIDUAL LIABILITY. A non-trading partnership or association has no power to borrow money and issue negotiable paper therefor and render liable the individual members not assenting thereto; and one seeking individual enforcement of liability therefor has the burden of showing, either express authority, or circumstances from which authority can be fairly implied.

**Same:** INDIVIDUAL LIABILITY: ESTOPPEL. An unincorporated telephone company organized for the purpose of operating a telephone line for the use and convenience of its members, is a non-trading association, and its members are not individually liable for money loaned to its manager without their knowledge or consent; and where one loaned money to the manager of such an association, with no understanding or belief that he was doing so on the credit of the individual members, and did not know of their connection with the association except in a single instance, and in that case did not know the financial standing of the member or rely upon his credit, the members were not estopped to deny the authority of the manager to charge them with liability.

*Appeal from Bremer District Court.*—HON. C. H. KELLY, Judge.

WEDNESDAY, SEPTEMBER 24, 1913.

ACTION in equity to recover upon a promissory note executed in the names of "Sumner Tlp. Co.," M. Robish, and John Sager and to foreclose a mortgage given by M. Robish and wife to secure the same. Other material facts are sufficiently stated in the opinion. Upon the trial decree was rendered as prayed against Robish and wife and bill dismissed on the merits in favor of all the other defendants except Sager, who was not served with notice and did not appear. The plaintiff appeals.—*Affirmed.*

*Sager & Sweet,* for appellant.

*Hagemann & Farwell* and *Dawson & Wehrmacher, W. R. McClure,* and *M. E. Geiser,* for appellees.

Weaver, C. J.—The promissory note upon which a recovery is sought is in the following form:

$1,300.00.   Waverly, Iowa, Dec. 1st, 1900.   On two year on or before after date, for value received we promise to pay Fred J. Schumacher or order at Denver thirteen hundred dollars with interest at the rate of 5 per cent. per annum until paid.   If interest is not paid when due the same shall bear interest at 5 per cent.   And if expense and costs are incurred by the holder in consequence of a failure to pay at maturity, the undersigned agree to pay a collection fee of 5 per cent. on the amount due.   Sumner Tlp. Co.   M. Robish.   John Sager.
Due ———.   U. S. Revenue Stamps, $.26.   12—1—1900. M. R.

The following indorsement appears on the back of this note: "December 1.   $65 interest.   1901."

As will be observed the names of the appellees do not appear upon the note as makers, guarantors, or indorsers. The claim of the plaintiff is that, at the time of the making of said note, the appellees were members of an association or company which held itself out to the world as a corporation doing business under the name of "The Sumner Telephone Company," which company or association, by its manager or representative, M. Robish, borrowed money from the plaintiff, giving the note in suit to evidence the debt so created.   It is further alleged that said company was not in fact incorporated and had taken none of the steps required by statute for the organization of corporate bodies, and that because of such failure the appellees and all others acting with them in said company became and were liable as partners for all the indebtedness contracted by it while so operating without the authority of law.   The appellees each and all deny that they were ever members of the Sumner Telephone Company, unincorporated, deny that they ever subscribed for stock therein or attended its meetings or took any part or share in its management or in any manner ever assumed or made themselves liable for its debts.   They also deny all knowledge of the borrowing of money from plaintiff or the giving of said note and

deny that they ever authorized Robish to obtain said loan or to give said promissory note therefor.  It is further alleged in defense that the Sumner Telephone Company was not a trading organization, did not engage in business generally or buy or sell property for gain, and that the only connection that appellees ever had with said company was in the relation of patrons who made use of its telephone line, receiving no profits and assuming no obligations except to pay as agreed for their use of the telephone line.  The trial court found that plaintiff's claim against the appellees was without merit and dismissed the bill as against them.

As appellees are not parties to the written instrument, the burden is, of course, upon appellant to establish facts necessary to impose liability upon them.  It was the opinion of the trial court that this burden had not been sustained, and we are disposed to concur in that conclusion.  While certain interesting questions of law arise for consideration upon the record, the controversy is largely a dispute of fact as to the existence of circumstances indicating a partnership liability on the part of defendants for the debts of the unincorporated Sumner Telephone Company.

1. CORPORA-
TIONS:  nego-
tiable instru-
ments: indi-
vidual liabil-
ity: burden of
proof.

I. The primary proposition insisted upon by appellant is that appellees with others were members of a company of persons pretending and professing to act as a corporation, and that, having failed to take the necessary steps to perfect such incorporation, they thereby subjected themselves to a statutory liability as partners, as provided by the Code, which, after reciting the successive steps which must be taken to effect the proper organization of a corporation, proceeds as follows: "Sec. 1616.  *Individual property liable.*  A failure to substantially comply with the foregoing requirements in relation to organization and publicity shall render the individual property of the stockholders liable for the corporate debts; but corporators and stockholders in railway and street railway companies shall be liable only for the amount of stock held

by them therein." We have then to ask whether, upon the conceded or well-proved facts, a case has been made to which this provision has any application. It is conceded that this alleged company spoken of in the record as the unincorporated Sumner Telephone Company never did incorporate and never took any step or made any effort to obtain incorporation. There is no evidence that it ever published or held itself out to the world as a corporation. The appellant himself does not say nor is there any other evidence that he supposed he was dealing with a corporation in taking the note on which he now sues. His testimony as abstracted by his counsel is simply this: "Remember Robish came to my place to borrow some money for the telephone company and I let him have $1,300. He told me he was in the company. He said Pleggenkuhle, Hurmence, Weiskirck, Wolf, and others whose names I have forgotten were in. . . . I saw him sign the names Sumner Telephone Company and M. Robish. Of those he mentioned I knew John Weiskirck and Wolf."

The section we have quoted from the statute is part of the law governing the creation of corporations and is in the nature of a penalty for failure by corporators or persons attempting to act in a corporate capacity to comply with the conditions so imposed. If there was no attempt to incorporate and the company was assuming no corporate functions or powers, the essential conditions of statutory liability are lacking. It is argued that the Sumner Telephone Company did hold itself out as a corporation in that it assumed a distinctive name, was organized with a president, secretary, and treasurer, issued or professed to issue shares, and constructed and operated a telephone line. But there is no law which prohibits any one or more men from adopting a trade-name or calling themselves a company or from selling shares in a business enterprise so conducted, and so long as they do not attempt to assume corporate functions they incur no liability under the cited statute. They may be liable as individuals or as partners for acts so done or for debts so incurred; but, if so,

it is because of some recognized rule or principle of the common law and not because of a failure to obey the statute. We find nothing in the record to justify us in holding appellant entitled to recover because of a failure of the telephone company to properly incorporate. This conclusion finds support in *Seaton v. Grimm,* 110 Iowa, 145.

II. We have next to inquire whether there was a partnership relation in fact or in law between the appellees and Robish, and, if so, whether the note in suit was given under circumstances making it a partnership obligation. That there was no express partnership agreement and that appellees never in fact understood or believed that they had assumed any such relation is perfectly clear, but this of course would be no defense if it clearly appears that they, with others, entered into a voluntary unincorporated association for the purpose of constructing and operating a telephone line, and it further clearly appears that the indebtedness sued upon was lawfully incurred by the association in the pursuance of the business for which it was organized, for such an association, it is well settled, is to a degree a partnership, and within well-defined limits the individual member may be made liable upon the contracts of the association, even where he has given no express consent.

2. Same: voluntary associations: individual liability of members.

The power to thus bind the individual member without notice and without his consent is certainly no greater than in other partnerships and extends only to contracts lawfully made and obligations properly incurred. The authority of one or more partners to borrow money and thus create an obligation against other partners without their knowledge or consent is not unlimited, nor is it a characteristic of all partnerships. Partnerships and unincorporated associations of individuals are among the most familiar expedients for the transaction of business. They are usually classified into trading and nontrading partnerships and associations, and in each the authority of one partner or member to bind another

partner or member is confined to transactions within the natural and proper scope of the business in which they are associated. 22 Ency. Law (2d Ed.) 153, 154; 4 Enc. Law (2d Ed.) 61, 62; *Sutton v. Weber,* 127 Iowa, 364.

A trading partnership or association is, generally speaking, one doing business commercially (a business of buying and selling for profit), while those in which the business done is something other than buying and selling for

**3. PARTNER-SHIPS: trading and non-trading partnerships.**

profit constitute the nontrading class. Among the most familiar of the latter are partnerships for the practice of a profession. But they are by no means limited to these. Among the kinds of partnerships which have been classed as nontrading, counsel for appellees call our attention to the following: A partnership for sawing lumber (*Dowling v. Bank,* 145 U. S. 512 [12 Sup. Ct. 928, 36 L. Ed. 795]); for owning a ditch or aqueduct and selling water to miners and others (*McConnell v. Denver,* 35 Cal. 365 [95 Am. Dec. 107]; *Brompton v. Waterworks,* 3 B. & A. 1); for operating gas works (3 Bing. N. C. 963); for performing paving contracts (*Harris v. City,* 73 Md. 22 [17 Atl. 1046, 20 Atl. 111, 985, 8 L. R. A. 677, 25 Am. St. Rep. 565]); for carrying on the business of building contractors (*Snively v. Matheson,* 12 Wash. 88 [40 Pac. 628, 50 Am. St. Rep. 877]); for doing an insurance and loan business (*Schele v. Wagner,* 163 Ind. 20 [71 N. E. 127]; *Lee v. Bank,* 45 Kan. 8 [25 Pac. 196, 11 L. R. A. 238]). The books contains many other illustrative examples.

In nontrading partnerships and unincorporated associations the authority of partners to involve each other in financial obligations is much more limited than in trading organi-

**4. SAME: non-trading partnership: individual liability.**

zations. While in the latter the authority to borrow money for the real or professed use of the partnership is ordinarily recognized, in the former it is quite as universally denied. According to the great weight of authority, it is not within the power of a nontrading partnership or association to borrow money or make negotiable paper and charge with individual liability partners

or members not assenting thereto.   This is distinctly held in *Schele v. Wagner*, 163 Ind. 20 (71 N. E. 127) ; *Snively v. Matheson*, 12 Wash. 88 (40 Pac. 628, 50 Am. St. Rep. 877). See, also, Ewell's Lindley on Partnership, vol. 1, section 130; *Lee v. Bank*, 45 Kan. 8 (25 Pac. 196, 11 L. R. A. 238) ; *Harris v. City*, 72 Md. 22 (17 Atl. 1046, 20 Atl. 111, 985, 8 L. R. A. 677, 25 Am. St. Rep. 565) ; *McConnell v. Denver*, 35 Cal. 365 (95 Am. Dec. 107) ; *Dowling v. Bank*, 145 U. S. 512 (12 Sup. Ct. 928, 36 L. Ed. 795) ; Story's Partnership, section 102. Stated in substantially the same form it has been said that in the case of a nontrading concern the burden is upon the plaintiff to prove either express authority, or circumstances from which such authority can be fairly implied, in the partner executing the note.   *Teed v. Parsons*, 202 Ill. 455 (66 N. E. 1046) ; *Bank v. Faults*, 115 Mo. App. 42 (90 S. W. 755) ; *Schellenbeck v. Studebaker*, 13 Ind. App. 437 (41 N. E. 845, 55 Am. St. Rep. 240).   Indeed, the rule as indicated by the authorities cited is no more than an application of the doctrine which is applied to partnerships in general that the authority of the partners to bind each other by their contracts is limited to contracts made within the scope of the business for which they are associated.   *Sutton v. Weber*, 127 Iowa, 364.   The borrowing of money and the giving of negotiable paper is not a necessary or an ordinary incident of the business of a nontrading association, and when it happens that such a concern does desire to borrow or a member or officer proposes to give or tenders a promissory note in its name, it is no hardship upon the lender or creditor to require him to look into the authority of one who proposes to bind others who are not present or consenting.

Assuming, then, for the present that appellees may properly be said to have been members of an unincorporated association for the construction of a rural telephone line and as such are chargeable as partners for its debts lawfully contracted, we think it must be said that the association was nontrading in its nature, and there is an entire failure to show authority in

5. SAME: individual liability: estoppel.

Robish to borrow the money for the association or appellees' consent to such transaction. An unincorporated telephone company, having no other purpose than the construction and operation of a telephone line for mutual convenience and mutual service, is not engaged in the business of buying and selling for profit. It is true this business, as is the business of almost every conceivable association of persons to promote some common purpose, contemplates to some extent the purchase and use of property. For instance, an unincorporated fraternal organization, society, brotherhood, or lodge may properly buy or build a fraternity house or lodge room, a partnership between lawyers may rent an office or purchase office supplies or a professional library, and a partnership organized to own and operate a system of waterworks may buy the necessary site, materials, and buildings; and the partner or officer who is given the management of such business may make purchases within the general scope of such purpose and bind all who are associated with him in the enterprise, but without special authority so to do no officer, manager, or representative of such society, brotherhood, lodge, or other unincorporated nontrading association may go to a bank or money lender and bind his associates by borrowing money or by making and negotiating a promissory note in its name. It is probable that, if a practice or custom be shown on part of such partnership or association to borrow money and give promissory notes, a different rule would apply, but there is nothing of the kind shown in this record.

There seems to be nothing to take the note in this case out of the operation of this rule. The money was borrowed by Robish who signed the note both with the name of the Sumner Telephone Company and his own name, together with John Sager, who appears to have signed as surety. None of the appellees were present. None of them knew that money had been so obtained or that plaintiff held any such claim until this action was begun. Indeed, there is no direct evidence that the money ever was used by or applied to the benefit of the

telephone company. Appellant asks that such fact be inferred from the evidence that, within two or three months after the date of this note, the company had checked from the bank with which it did business an aggregate of about $1,300, a circumstance which in itself has no tendency to show the source of the deposit upon which the checks were made. If the company had any board of directors, which seems to be negatived by the evidence, there is no record of any vote or agreement of the members of the company authorizing the board to borrow money. Robish figures officially in the story as the secretary and treasurer of the company. He with others took part in canvassing for patrons of the line and for the co-operation in some form of the appellees and other citizens of the community. It fairly appears, however, that he was the active spirit in the enterprise, and if he was not, as appellees claim, the sole owner doing business under the trade-name of the Sumner Telephone Company, he was at least its leader or manager. But there is nothing to show that he had been granted authority by his associates to borrow money in the name of the association or to bind it or its members by the execution of promissory notes.

Nor do we discover anything in the record which can avail appellant as an estoppel against appellees' denial of the authority of Robish to charge them with liability in this manner. If, as his counsel claim, he supposed he was dealing with a corporation, though he does not so testify, then he did not lend the money on the personal credit of the appellees. With the single exception of the appellee Weiskirck, he seems not to have known of the alleged connection of any of these defendants with the company, and even as to Weiskirck he does not say he knew his financial standing or relied thereon in extending credit to the company. Indeed, he nowhere says that he entered into the transaction with the understanding or belief that he had recourse upon the members of the company individually for the collection of the claim thus arising. The elements of an estoppel are entirely wanting.

The authorities cited by appellant [*Bank v. Gas Light Co.*, 159 Mass. 505 (34 N. E. 1083, 38 Am. St. Rep. 453); *Berry v. Insurance Co.*, 94 Iowa, 135; *Trust Co. v. Gas Co.*, 118 Ky. 588 (81 S. W. 927, 26 Ky. Law Rep. 401, 111 Am. St. Rep. 302); *White v. Creamery Co.*, 108 Iowa, 522; and others of that class] are not controlling in this case for they treat of and relate to the powers of corporations and their officers and managers and not to unincorporated associations or partnerships which have never sought or attempted incorporation. When a company is incorporated it becomes in law an individual or person, and in the transaction of any business it is, ordinarily at least, empowered to do whatever a natural person may do, contract indebtedness, borrow money, and execute promissory notes. In so doing, however, it acts upon its own credit and not upon the credit of its individual members, and they are not charged with personal liability. The corporation cannot imperil the private interests of its members to the extent that a partnership may, and the necessity of guarding against the abuse of authority is more imperative in the latter case. The doctrine of the cases relied upon by appellant may be fully approved without requiring any different result in this case. It follows from the foregoing that we must hold the note in suit unenforceable against the appellees.

III. The foregoing conclusions that appellees are not shown to be charged with any statutory liability, and that, even if the Sumner Telephone Company was a voluntary unincorporated association or partnership and therefore liable for debts contracted by its officers or managers within the proper scope of the organization, yet under the circumstances of this case there is no showing of authority in Robish to borrow money in the name of the association and charge appellees with individual liability therefor, make it unnecessary for us to consider or decide the other question to which appellant gives much attention, and that is whether the Sumner Telephone Company was in fact an association or

partnership of which the appellees were members, or was merely the trade-name under which M. Robish, who appears to have been a private banker, undertook to construct and operate one or more telephone lines. Upon this question of mixed law and fact the record affords room for argument. The trial was had without the testimony of Robish. Had this been available, much light might have been cast upon matters of material fact which are now left in obscurity and doubt. The appellant is compelled, therefore, to rely chiefly upon the testimony of his adversaries and the inferences which he asks us to draw therefrom. It is not to be denied that there are some evidences of weakness in this phase of the defense, and yet the story of the appellees is by no means incredible. If they tell the truth, each of the several transactions was in the nature of a loan to Robish or to the company, and there was never any intention on appellees' part to become members of the unincorporated company or to assume any responsibility for the conduct of the business. The record does not justify us in saying that their testimony is false, and appellant must be held to have failed to establish his case by the necessary preponderance of the evidence.

It fairly appears that Robish and the unincorporated company were one. The nominal president of the concern was his employé. He himself was the so-called secretary, treasurer, and manager. There was no governing board of directors or trustees to act for the company or to limit, direct, or control its affairs or the conduct of its officers. The members (if any other than Robish) do not appear to have met and granted him authority to do the things which he did or to exercise the powers which he took upon himself. When incorporation was finally determined upon and accomplished, he as the individual owner of the telephone line, conveyed it to the corporation by his personal bill of sale and warranted the title so transferred, and this claim or assumption on his part is quite consistent with the history and development of the enterprise from the beginning, so far as it is disclosed

in the record.  To recover, appellant must bring himself clearly within the benefit of some established rule or principle of the law, and in this we think he has failed.  There is very little shown to commend his demand against the appellees to equitable consideration, and the court ought not to go out of its way to discover grounds for compelling payment of his claim by parties who did not contract the debt, who had no knowledge of its existence until suit was begun thereon, who gave no authority to Robish to borrow money on their account, and where the lender did not part with his money relying upon their conduct or credit.  What we have said necessarily controls the result of this appeal.

The decree below has our concurrence, and it is therefore *Affirmed.*