Argued September 18, affirmed November 13, 1928.

MARTHA MILLER, EXECUTRIX, *v.* ASHLEY & RUMELIN, BANKERS.

(271 Pac. 596.)

For appellants there was a brief and oral arguments by *Mr. J. H. Kelley* and *Mr. Richard Sleight.*

For respondent there was a brief over the name of *Messrs. Platt, Platt, Fales & Smith,* with an oral argument by *Mr. Isham N. Smith.*

COSHOW, J.—The principal contention of plaintiffs in this court is that said partnership was a non-trading partnership, and that J. A. Miller of that firm was not authorized without special authority from or consent of his partner to sell the warrants involved in this litigation: 1 Rowley on Partnership, §§ 151, 426; *Schumacher* v. *Summer Tel. Co.,* 161 Iowa, 326 (142 N. W. 1034, Ann. Cas. 1916A, 203, 207); *Harris* v. *Mayor,* 73 Md. 22 (17 Atl. 1046, 20 Atl. 111, 25 Am. St. Rep. 565, 8 L. R. A. 677); *McManus* v. *Smith,* 37 Or. 222 (61 Pac. 844); *Lee* v. *Ellis,* 121 Or. 259 (233 Pac. 873).

The evidence shows beyond question that decedent Miller transacted all of the business with the bank. He conducted this business for several years. Plaintiff Bauer knew that his partner Miller was transacting the business and never at any time inquired of the bank about the business nor made any objection to the manner in which it was being transacted until many months after the death of his partner. Indeed, plaintiff Bauer testified as follows:

"Q. You never authorized anybody to do any business, did you? Mr. Miller looked after the business, didn't he? A. Practically altogether, yes.

"Q. And he had power to sell these warrants from time to time, didn't he? A. Sure.

"Q. So that if the bank here, the Ashley & Rumelin Bank, bought them and put it on the account, it was a perfectly legitimate transaction, so far as you know? A. So far as I know. * *

"Q. Where did Miller & Bauer get their money to transact business on? A. Almost exclusively from

Ashley & Rumelin. The last few years we got some down at Astoria, but almost exclusively from Ashley & Rumelin.

"Q. How did you think Ashley & Rumelin were paid back? A. By interest, and so on and so forth.

"Q. How would you pay the principal? * * A. As soon as the warrants were either sold with Freeman, Smith & Camp or several other bonding houses, I understood we always sold those, some I have not mentioned, and as soon as the money was released, then the money was taken to Ashley & Rumelin to liquidate any debt that they may have had there at the time. That was my understanding of the whole transaction.

"Q. And yet Mr. Miller might have sold them to Ashley & Rumelin direct, as these transactions show he did? A. Well, he reported the statement to me that he did not.

"Q. Answer the question. He may have sold them to Ashley & Rumelin direct, as these transactions show he did? A. Sure.

"Q. And if he did, it was a legitimate transaction, as far as you are concerned? A. I expect it would be."

██ There is no disputing the claim of defendant that Miller of the partnership almost exclusively attended to the financial affairs of the partnership. The partnership business was so conducted for several years. It was not necessary that direct authority be conferred by one partner upon the other to transact such business as is usually transacted by a commercial partnership. The fact that the business of a nontrading partnership is conducted in a certain manner for a number of years is very convincing evidence that both parties acquiesced in and assented to that manner of doing business. If one partner transacts a certain line of business necessary to the promotion of the partnership affairs for a

number of years without objection from the other partner we may conclude that the former was authorized by his partner to so transact the business. Long acquiescence will amount to ratification: *Maasdam* v. *Van Blokland*, 123 Or. 128, 135 (261 Pac. 66). Plaintiff Bauer received the benefits of the transactions with defendant and enjoyed the fruits of the money received by said partnership. He cannot now repudiate the transactions of his partner.

Mr. Kelley, one of the attorneys for plaintiffs, collected the warrants under discussion. In his argument to this court Mr. Kelley said:

" * * In February, 1924, Mr. Miller came to me and asked me to endeavor to collect the balance of the Astoria warrants which they had, amounting to about $18,000, comprising warrants issued on three different districts. * * On July 30, Miller of Miller and Bauer gave an order. * * On July 30th an order was given by Mr. Miller on Ashley & Rumelin to deliver the warrants to me for collection. * * At the time the warrants were delivered Miller signed an authorization to deduct from the proceeds $1,500 for attorney's fee for making the collection and to deliver the balance of the money to the United States National Bank. * * "

Mr. Kelley received the warrants from the U. S. National Bank, collected the warrants with interest, deducted his attorney's fees and delivered the proceeds to said U. S. National Bank. It will be noticed that this entire transaction with Mr. Kelley was done with the authority of the partnership acting by and through Miller. Plaintiff Bauer could as well challenge that transaction as he could the want of authority in his partner Miller to sell the warrants to defendant. The transaction with Mr. Kelley itself supports the contention of defendant that decedent

Miller transacted the financial business of the said partnership.

■ ■ Plaintiffs'' exhibit, which is a letter given by C. E. Rumelin for defendant, directs the warrants to be delivered to Mr. Kelley for collection and is as follows:

"No. 10084 to 10109 Inc., $2600, Solem & Gustafson, Oct. 10, 1921.
"Or. 5967 Lexington Ave. 2d to 8th Sts. Int. not paid Oct. 19/21.
"No. 8832 to 8929 Inc., $9800 Miller & Bauer.
"No. 8781 to 8831 Inc., $5100, M. & B. (Pencil notation.)
"5838 Sewerage & Draining Dis. No. 6, Apr. 5, 1921. Presented Apr. 8, 1921.
"No. 7850 to 7853, Inc., $400.00.   Miller & Bauer.
"5619
"7828      7828      Miller & Bauer, Oct. 19, 1920.
"Niagara 11th to 14th St., $976.55.   Pres. Oct. 23, 1920.
"U. S. Nat. Bank,
"Mr. Dick:

"Introducing Mr. J. H. Kelly.

"Will you please accommodate Mr. Kelly with Nos. amount and Improvement, Astoria Warrants of Miller and Bauer, held as security Ashley & Rumelin. —Thanking you I am,

"Truly yours,
"C. E. RUMELIN."

It is contended by plaintiffs that this letter states that the warrants therein described belonged to Miller & Bauer. Defendant claims that the letter simply referred to the warrants of Miller & Bauer held as security by the U. S. National Bank to secure the note of Ashley & Rumelin. The books of defendant introduced in evidence show that the $12,400 in warrants in controversy were carried as the property of defendant from September 7, 1922, until June

30, 1924, and show the collection thereof. For some time prior to September 7, 1922, said warrants were a part of a larger number of warrants carried by defendant as its property. A part of said larger amount of warrants were redelivered or otherwise disposed of by defendant on September 7, 1922, leaving the sum of $12,400. The books have not been impeached. During that time defendant rendered a number of statements of account to said partnership for which a receipt was given. A copy of the receipt is as follows:

"Portland, Oregon, Jan. 19—23.

"Received from Ashley & Rumelin, Bankers, Portland, Oregon, pass book together with cancelled vouchers, to be examined at earliest opportunity. If not advised to the contrary within 15 days, it will be understood that the account is acknowledged as correct.

"J. A. MILLER.
"By F. L. SULIVAN."

The evidence also shows that a short time prior to the death of said Miller he burned a number of papers, and it is claimed statements from the bank were included in those burned. In our judgment the preponderance of the evidence as to the sale of the warrants amounting to $12,400 is in favor of defendant. We cannot sustain plaintiffs in their contention that Miller was not authorized to dispose of the warrants. We think the evidence is overwhelming to the effect that Miller was authorized to dispose of the warrants and transact such other business as was necessary to finance the firm of Miller & Bauer. That being true and the evidence preponderating in favor of defendant that it purchased said warrants aggregating $12,400, the ruling of the Circuit Court thereon is affirmed.

As to the other warrants aggregating $5,100 but little need be added. Those warrants were held by the U. S. National Bank as collateral for the note given by Messrs. Ashley & Rumelin, owners of defendant bank. Their testimony to the effect that the note at the U. S. National Bank signed by them individually was for the accommodation of said partnership is not seriously disputed. In the oral argument here Mr. Sleight, attorney for plaintiffs, said:

"They have accounted for the $6,000 worth of warrants upon which they borrowed $6,000 from the U. S. National Bank and they show that they credited Miller's account, and that Miller drew checks on it."

■ ■ It was contended also at the argument that Miller had no authority to appropriate money belonging to said partnership. The evidence discloses some funds belonging to said partnership were paid to decedent Miller. It is seriously argued that defendant is liable because it did not inquire of plaintiff Bauer or formally get his consent to the transfer of that quantity of money from the partnership to said Miller. We do not think this is the law. By the established manner of transacting the affairs of said partnership, the decedent Miller must be held to have had authority to draw the money, and defendant is not responsible for what Miller did with that money under the evidence in this case. There is no showing that decedent Miller had no right to the fund. Unless notice of a misappropriation of the partnership funds by the decedent Miller was brought to defendant, or such a state of facts as to put defendant upon inquiry, it cannot be held liable for funds of the partnership taken by one of the partners. It is only fair to add that there is no intimation that Miller un-

lawfully appropriated any of the funds of the partnership. His executrix and plaintiff Bauer are acting together in this suit. There is no presumption that Miller unlawfully appropriated the funds.

■ ■ An account stated is binding only as to the items included in the account: *Crawford* v. *Hutchinson*, 38 Or. 578, 580–582 (65 Pac. 84). It is claimed by plaintiffs that the warrants in controversy were deposited with defendant for safekeeping. If that were true the warrants would not appear necessarily in the account rendered by defendant from month to month to said partnership. For that reason we do not rest our decision on the principle of accounts stated. We have considered, however, the accounts as rendered and retained without objection as evidence tending to show that defendant Bauer must have had some knowledge of these transactions. The receipts given for the accounts stated were signed by a clerk for Mr. Miller. The statements were probably burned by Mr. Miller, according to the testimony of his son.

A judgment was rendered in favor of defendant against plaintiffs for the balance due on a note and is not disputed as we understand the record. The decree is affirmed. Neither party will recover costs in this court. AFFIRMED.

BEAN and ROSSMAN, JJ., absent.