## COMMERCIAL CASUALTY INS. CO. v. TETZ.

### No. 7934.

Circuit Court of Appeals, Ninth Circuit.

March 20, 1936.

Wm. D. Askren, of Seattle, Wash., and John Lichty, of Portland, Or., for appellant.

Glen R. Metsker, of St. Helens, Or., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This is an action by a surety company, appellant, to recover from its principal, appellee, the amount paid by it on account of a surety bond executed by it on behalf of the copartnership of Godfredson & Tetz, composed of C. Godfredson and R. Tetz, for the faithful performance of a contract for the construction of waterworks and for the payment of labor and other claims resulting therefrom for the town of La Conner, in the state of Washington.

In a suit prosecuted by appellant to determine its liability under the bond to various claimants, judgment was procured July 14, 1932, in a superior court in the state of Washington against the appellant for the amount of $15,706 with costs amounting to $65, which it paid. The appellant seeks to recover this amount from the appellee R. Tetz, his partner C. God-

fredson being insolvent, and $699.36 in addition for expenses incurred in the trial of said action, together with interest on both amounts.

The appellant alleges that C. Godfredson and R. Tetz were copartners; that they entered into the bond and the contract for the work therein specified as such copartners.

The case was tried by the court; the jury having been expressly waived in writing. The evidence was without conflict and much of it is in writing. It appears therefrom that prior to the application and issuance of the bond involved, appellee with Godfredson at different times had made application for 4 contract bonds in the name of the partnership Godfredson & Tetz. The first application dated November 3, 1929, was for a bond in the sum of $907.30 in favor of the city of Milwaukie, Or., covering the construction of a trunk sewer in that city; the second, May 29, 1930, for the sum of $14,657.45 in favor of the city of West Linn, Or., covering a contract for the construction of a sewer in that city; the third, October 24, 1930, for the sum of $1,000 in favor of D. P. Slater covering a contract for the construction of a water system for the Mt. Scott water district; and the fourth, November 22, 1930, for the sum of $21,143 in favor of the city of West Linn, Or., covering a contract for the construction of a sewer in that city. These applications were signed Godfredson & Tetz and by C. Godfredson, a "member of firm" and R. Tetz, a "member of firm," individually and as copartners. The appellant in pursuance of these applications executed the bonds applied for; the first, November 4, 1929; the second May 29, 1930; the third October 24, 1930; and the fourth November 24, 1930.

As a basis for the application for the first bond in 1929, a partnership statement of credit dated November 1, 1929, was furnished by the appellant. It contained the names of R. Tetz and C. Godfredson as "comprising co-partnership." In response to the question, "Is partnership general or limited?" the answer was, "General." In response to the question, "Are any of the firm members engaged in any other line of business?" the answer was, "Yes." To the question, "If so, give particulars," the answer was, "R. Tetz, farming." The statement showed total assets, $37,250; real estate, $24,000. Real estate standing in name of R. Tetz was fixed at $20,000.

The statement contained the following representation and promise: "For the purpose of inducing the Commercial Casualty Insurance Company to issue or procure the issuance of bonds and other writings obligatory in the nature thereof and of establishing and procuring credit from time to time without depositing collateral security to the full amount thereof, the undersigned furnish (es) the Commercial Casualty Insurance Company the foregoing as a true and accurate statement of the undersigned's financial condition as of the date given and hereby represent(s) that the answers to the foregoing interrogatories are true. The undersigned agree(s) to notify the Commercial Casualty Insurance Company promptly of any change that materially reduces the undersigned's pecuniary financial responsibility, and to furnish additional or supplemental financial statements or other information from time to time as required by the Commercial Casualty Insurance Company."

This financial statement with its representations and agreement was adopted by reference in each application for a bond.

In July 1931, C. Godfredson applied to appellant for the surety bond involved in the case at bar, referring as usual to the financial statement already on file with the appellant, and in pursuance of this application the bond dated July 21, 1931, was executed. The application for this bond was made at the Seattle office of appellant instead of the Portland office as had been the previous bonds applied for. It was signed Godfredson & Tetz, applicant, by C. Godfredson. It stated that it was made on behalf of C. Godfredson and R. Tetz. It was referred to the main office of the appellant at San Francisco, and the execution of the bond applied for was authorized by that office. The bond issued in pursuance of this application was signed Godfredson & Tetz by C. Godfredson, and purported to be executed by and on behalf of the copartnership as follows: "Know all men by these presents: That we, C. Godfredson & Tetz, co-partners, doing business as Godfredson & Tetz, as principal, and Commercial Casualty Insurance Company, * * * as surety, are bound * * * unto the town of La Conner," etc.

The appellee contends and the trial court found that there was no partnership between the parties with reference to the

procuring of the bond for the La Conner job. We will now deal with that contention and finding.

The appellee's contention in effect is that there never was any copartnership with reference to any of the jobs; that he had loaned C. Godfredson money on each job upon an agreement to pay interest thereon plus 5 per cent. of the profits derived from the job. The agreement made with reference to the La Conner contract in the state of Washington he testifies was different in that there was no agreement there for a division of the profits, but there was a loan by him of $4,000 to Godfredson at 8 per cent. interest.

■ We are not here concerned with the exact relationship between C. Godfredson and R. Tetz as to the profits and proceeds from the various jobs taken in the name of Godfredson & Tetz. In this case, the situation is somewhat unusual because of the representation by both Godfredson and Tetz in the financial statement of November, 1929, that they were general partners and the agreement that the surety company would be notified in the event there was a change "that materially reduces the undersigned's [Godfredson and Tetz] pecuniary financial responsibility." As Tetz was the only responsible member of the firm, and this fact was known to the surety company as well as to both partners, it is clear that a dissolution of the firm would constitute such a change. If this agreement had been made solely with relation to the particular bond executed by the surety company at the time of the first application, it might be argued that the effect of the agreement was confined to the liability arising under that contract. But the representation was a general one for the purpose of securing "the issuance of bonds and other writings obligatory in the nature thereof and of establishing and procuring credit from time to time." It did not purport to be confined to the particular venture for which the bonds were sought. The financial statement was a declaration of a general copartnership. So far as the partnership relationship between the two partners is concerned, it was in effect an agreement on the part of both partners that they would be bound as partners in all transactions entered into by them or either of them as copartners with the appellant, and a declaration of the authority of each partner to act on behalf of the copartnership in partnership matters until such time as they had advised the appellant of the dissolution of the copartnership. It follows that in the absence of a notice to the contrary, so far as appellant was concerned, Godfredson was authorized by Tetz to sign contracts with the surety company in the name of the copartnership.

■ What we have said disposes of appellee's contention that he can only be bound, if at all, upon the principle of estoppel, and, as the appellant did not plead an estoppel, that issue is not properly before the court. When the appellant proved the existence of the copartnership by showing the express representation made to it by the copartners in the financial statement and proved the execution of the bond in question by the copartnership and its expenditures under it, it proved the case which it had alleged in its complaint. The appellee's denial of the existence of this copartnership or of his interest in the La Conner contract did not meet the proof thus made by the appellant, for the appellee, in order to defeat the appellant's claim, was bound to show that the authority he had given to his copartner to execute instruments with and to the appellant on behalf of the copartnership had terminated. Under these circumstances, even if we assume that the rules of practice laid down in the Oregon Code, which is applicable in the federal courts in that state, requires a reply to the answer, it was not necessary for the appellant to plead an estoppel by such reply. It did not rely upon an estoppel, but on an express agreement with it conferring authority upon Godfredson to act for Tetz as a copartner. It should also be noted that the cases cited by the appellee upon this subject from Oklahoma, Texas, and Kansas [McKallip et al. v. Geese, 30 Okl. 33, 118 P. 586; Merritt v. H. O. Wooten Grocer Co. (Tex.Civ.App.) 35 S.W.(2d) 1071; McAdow v. Kansas City Western R. Co., 100 Kan. 309, 164 P. 177, 179, L.R.A.1917E, 539] do not apply to proceedings in the federal court in the state of Oregon, which is controlled by the practice defined by the Oregon statutes for courts in Oregon under the Conformity Act. (28 U.S.C.A. § 724)

Appellee contends that appellant is not entitled to rely upon the apparent existence of a copartnership where it had the ready means of ascertaining the facts with reference thereto by getting in contact with the appellee Tetz by telephone. This contention is only pertinent upon the theory that

appellant is relying upon an estoppel. As we have stated, the representation by the copartners that they were general partners, and their express agreement to inform the surety company in case of any change affecting the financial responsibility of the partners, was an authorization to each partner to bind the other in partnership matters as far as appellant was concerned until it was advised that the representation was no longer to be relied upon.

■ Appellee also contends that inasmuch as the applications for the 4 bonds executed by the copartnership prior to the one involved in the case at bar were signed by both Godfredson and Tetz, "he had a right to believe that before issuing a bond attempting to hold him as a partner, appellant would require him to sign the application therefor." It may be that the appellee did in fact rely upon this course of dealing established. But there was no agreement on the part of the surety company that appellee would be informed as to each act of his copartner. On the contrary, his own agreement and representation was in legal effect authorization to his partner to act alone, on behalf of the copartnership.

■ It is next contended by appellee that inasmuch as "both C. Godfredson and R. Tetz were residents of the state of Oregon and lived close to the city of Portland" and "the four jobs previously bonded by appellant were in the immediate vicinity of said city," there was no apparent authority for the execution of contracts and bonds in the state of Washington; citing 30 Cyc. 406, where it is said: "The fact that persons are partners in one place * * * does not tend to prove them partners elsewhere." Here again we are met by the fact that there was an express representation by Tetz as well as Godfredson that they were partners and by an agreement to notify the appellant in case they ceased to be partners. There was no geographical limit to such authority. This agreement is sufficient answer to the appellant's proposition.

It is claimed also that the partnership existing between Godfredson and Tetz was not a commercial partnership. The trial court found this to be a fact. Appellee relies upon the statement in Schumacher v. Sumner Tel. Co., 161 Iowa, 326, 142 N.W. 1034, 1036, Ann.Cas.1916A, 201, to the effect that "in nontrading partnerships * * * the authority of partners to involve each other in financial obligations is much more limited than in trading organizations."

He also cites 20 R.C.L., 821, § 25, where it is said: "It has even been held that in noncommercial partnerships, one who seeks to hold the firm bound on a contract made by a single member must be able to show either express authority, or that such is the custom and usage of that particular branch of business in which the firm is engaged, or such facts as will warrant the conclusion that the partner had been invested by his copartners with the requisite authority, the distinction being that in commercial partnerships the extent of a partner's power to bind the firm is a question of law, while the power of a partner in a noncommercial firm to bind his copartners is a question of fact."

It is a sufficient answer to this citation of authority to again point out that in the case at bar the copartners in the financial statement delivered to the surety expressly represented themselves as engaged as a general partnership in the contracting business, and in legal effect authorized each partner to act in partnership matters, in so far as appellant was concerned, until it was notified to the contrary.

■ Appellee contends that as the bond in question recites that it is "sealed with our seals and dated this 21st day of July, 1931," and the corporate seal of the appellant is attached, the bond is a sealed instrument as to all the parties, and a partner has no right to bind a copartner by a sealed instrument; citing Parsons on Partnership (4th Ed.) p. 149, §§ 122, 124; 20 R.C.L. §§ 106, 107; and Rowley on Partnership, vol. 1, p. 504, § 422.

In the state of Washington the seal adds nothing to the effect of a bond or other instrument or contract in writing. The Washington statute, in which state the document was executed, provides, with reference to writings, that "the addition of a private seal * * * shall not affect its validity or legality in any respect." Section 10556, Remington's Revised Statutes of Washington. The state of Oregon has a similar statute. Oregon Code of 1930, § 9-704; see, also, 20 R.C.L. p. 897, § 108; 56 C.J. 890, 891; 24 R.C.L. 689; McLeod v. Morrison & Eshelman, 66 Wash. 683, 120 P. 528, 38 L.R.A.(N.S.) 783.

It may be added that even in the absence of an express agreement to notify the appellant of any change in the financial responsibility of the partnership, in order for appellee to relieve himself of partnership liability where the partnership was shown to exist and to have dealt with appellant as such, he would have to prove the dissolution of the partnership, and a notice thereof to the appellant. Burke Mach. Co. v. Copenhagen et al., 138 Or. 314, 6 P.(2d) 886, 888, and authorities therein cited.

Judgment reversed.