FRONTIER REFINING COMPANY, a corporation, Appellant (Plaintiff below),

v.

KUNKEL'S, INC., a partnership, George Fairfield, Clifford D. Kunkel and Harlan Beach, partners, associated in business under the common name and style of Kunkel's, Inc., Appellees (Defendants below).

No. 3432.

Supreme Court of Wyoming.

Nov. 19, 1965.

Richard F. Pickett, of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellant.

W. A. Smith, H. S. Harnsberger, Jr., Lander, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff Frontier Refining Company commenced an action against Kunkel's, Inc., as a partnership, and George Fairfield, Clifford D. Kunkel and Harlan Beach, as members thereof, to recover a balance claimed due on an open account. By its amended complaint, Frontier alleged that the individual defendants by oral agreement were associated in the business of operating a service station and truck terminal in Cheyenne, Wyoming, as a partnership under the name of Kunkel's, Inc., and were indebted to plaintiff in the sum of

$6,732.32 for gasoline sold by plaintiff to said partnership. The defendant Kunkel was never served and the action proceeded against the defendants Fairfield and Beach. Both denied that any partnership was ever created between the individual defendants; denied that they were ever associated in the operation of any business with the defendant Kunkel under the name of Kunkel's, Inc.; and affirmatively alleged that the defendant Kunkel operated the business as an individual. Upon trial, the court found that the business known as Kunkel's, Inc., was not a partnership composed of the individual defendants; found generally for the defendants; and judgment was entered dismissing the action. Frontier appeals from the judgment. Hereafter we shall refer to the individual defendants by their last names.

In its brief Frontier states that basically there is only one question presented by this appeal and that is "What is the business relationship between parties in a business venture who fully intend to incorporate the business but utterly fail to do anything toward incorporating?" That strikes us as being somewhat of an oversimplification of the problem presented, but in any event it is Frontier's position that when this occurs the parties are individually liable as partners for the debts incurred in the business venture. To support its position Frontier cites, among other authorities, the general rule set forth in 68 C.J.S. Partnership § 40, p. 462, which states:

"* * * In most jurisdictions the rule is * * * to the effect that, where two or more persons hold themselves out as a corporation, or permit an association of which they are incorporators, stockholders, or members to be so held out, when there is no corporation either de jure or de facto, they will all be liable individually as partners for its debts and on contracts entered into either by themselves or by others as agents of the pretended corporation and in its name * * *."

Without question the foregoing legal principle is well recognized. Nevertheless, as an initial approach to the problem here, we have been somewhat bothered as to whether or not such rule, which was laid down independently of statute, affords the remedy which Frontier seeks to pursue. A statutory remedy relating to the matter was in effect at the time the business transactions here took place. Section 17-36.122, W.S.1957, provides as follows:

"All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."

The distinction between the two remedies might well have had an influence upon the issues presented for trial. However, both parties seem to have overlooked the statute, and in view of that and in view of the conclusion we have reached that Frontier, in any event, failed to bring its business transactions within the scope of the general rule upon which it relies, there appears to be no necessity to inquire into the matter.

In order that the basis for the conclusion reached be understood, it is necessary to relate the evidence in some detail. In this connection, however, we might point out that much of the testimony upon which appellant relies was in conflict with the evidence favorable to the defendants. Thus, even though we might agree that there was testimony which if believed by the trial court might tend to support a finding contrary to that made, it is incumbent upon us, in view of the conflict, to put such testimony aside and give to the evidence favorable to the defendants every inference which may reasonably be drawn from it. Kinsley v. McGary, Wyo., 390 P.2d 242, 243.

With respect to the facts, the record discloses that Frontier was a refiner and distributor of petroleum products. About the middle of May 1962 Kunkel became interested in taking over a filling station and truck stop in Cheyenne, Wyoming,

owned by Frontier and which was then under lease to one "Woody" Griffitt. Such lease, however, was about to be terminated. Kunkel talked with B. L. Warren, zone manager of Frontier, and advised Warren that he had no money to finance the venture but was acquainted with Fairfield and would talk with Fairfield to see "if he could raise the money." Kunkel then went to the Gas Hills area in Wyoming where Fairfield in association with Beach was engaged in a mining venture, and according to the testimony of Fairfield the approach of Kunkel was to obtain a loan. Fairfield declined and there was then some conversation with respect to the formation of a corporation. Fairfield advised Kunkel that if he and Beach went in on the venture it would have to be on that basis. Apparently very little was said concerning the details of the formation of the corporation except that it would be Kunkel's responsibility to see that the business was incorporated—which was not even attempted—and Kunkel was not to "open the door" unless that had been done. It was understood also that Kunkel would manage the business of the corporation and in order to get it started Fairfield and Beach would purchase the equipment from Griffitt and would then take stock for their investment. Each defendant was to receive one-third of the stock of the corporation.

A short time later Fairfield came to Cheyenne and looked over the station. Warren, Frontier's employee, testified that this was about June 1, 1962; that he talked with Fairfield at that time; that he was told by Fairfield that the business would be a corporation; and that he was also told "Cliff [Kunkel] would be able to go on it." However, Fairfield testified that he did not see Warren at that time and had never said anything to Warren about a proposed corporation. Neither is there evidence that Beach ever discussed such matters with anyone. In this connection, however, Warren on May 28, 1962, by written memorandum advised Frontier that the business was to be incorporated under the name of "Kunkel's Incorporated" and would be financed by Fairfield and Beach and that both would be officers of the corporation. Warren also submitted with the memorandum a financial statement of Kunkel, which he said was not to be considered that of the corporation. No financial statement of Fairfield or Beach was ever obtained or submitted to Frontier.

Also, on June 1, 1962, Frontier entered into a sublease agreement for the station with "CLIFFORD D. KUNKEL DBA KUNKEL'S, INC.," as sublessee, which was to become effective on June 12, 1962. Other agreements were entered into in the same manner and with one exception the agreements were signed "C. D. Kunkel" without reference to the purported corporate name or any corporate capacity. The exception was the "Distributor's Contract" which set forth the conditions relating to the purchase and sale of petroleum products. Here the name "Kunkel's, Inc." preceded the signature. Right here we might also point out Fairfield's testimony to the effect that he never saw these agreements until sometime in November 1962, and that he had not previously discussed with Kunkel the negotiation of such agreements.

Soon after the agreements were made, Kunkel, unknown to Fairfield or Beach, took over the station and commenced doing business. The first sale of gasoline by Frontier to the station was made on June 13, 1962, and was billed "Clifford D. Kunkel dba Kunkel Inc." Subsequent sales were billed in the same manner. Some thirty days after the initial sale Frontier discovered that through error the products purchased by the station were not paid for at the time of delivery as had been provided in the "Distributor's Contract," and an indebtedness in excess of $5,000 accrued during that period.

It is also in evidence that Fairfield and Beach put some $11,000 into the venture, but the exact dates that these payments were made cannot be ascertained from the record. However, the testimony of Fair-

field tends to show that two of the checks aggregating the sum of $10,000 to be used for the purchase of the inventory and equipment from Griffitt were made subsequent to the time that Kunkel opened the station. With respect to all of these payments Fairfield testified that he was not aware of Kunkel's failure at that time to incorporate the business and there is no evidence that he was aware of the indebtedness that had accrued during the thirty-day period. Fairfield also denied the testimony of Warren that Fairfield, when the delinquency was called to his attention, gave assurances that the account would be paid.

■ No doubt there was other evidence which was also taken into consideration by the trial court when it found that there was no partnership composed of the individual defendants. However, the foregoing, when carefully analyzed, lends sufficient support to the trial court's conclusion that the facts here were such that individual liability could not be imposed upon Fairfield and Beach on the theory that they were partners in the venture under general rules of law relating to a purported corporation.

In the first instance the trial court was entitled to infer that Kunkel was the sole source of the information given to Frontier concerning a proposed corporation under the name of "Kunkel's, Inc.," and that neither Fairfield nor Beach, expressly or impliedly, authorized Kunkel to make such representations or to enter into contracts with Frontier in the name of "Kunkel's, Inc." Such fact would lend substantial support to a conclusion that neither Fairfield nor Beach held themselves out as a corporation, an essential element under the general rule advanced by Frontier.

Another inference that could readily be drawn was that the indebtedness was not incurred in the name of a pretended corporation. At the outset of the business relations between Frontier and the venture in question, Frontier with full knowledge that a corporation had not yet been formed chose to transact its business with Kunkel as an individual. With respect to the indebtedness, the plain fact is that under the contract which Kunkel had signed no credit was to be extended to anyone. Thus, from Frontier's standpoint it would seem that the matter of credit, at the time, was unimportant. Now, after extending credit by mistake, it attempts to explain that the reason its business transactions were entered into with Kunkel as an individual was the lack of a corporate entity with which to contract. Such explanation would hardly prevent the trial court from concluding that Frontier did not extend credit or intend to extend credit to "Kunkel's, Inc.," and that Frontier was content to look only to Kunkel for performance of its agreements. It has been determined that a creditor, under such circumstances, will be held to his bargain. Guilford Builders Supply Company v. Reynolds, 249 N.C. 612, 107 S.E.2d 80, 83. Furthermore it seems only reasonable to conclude that if Frontier intended to look beyond Kunkel for fulfillment of obligations growing out of the operation of the station it would so have advised Fairfield and Beach at the time as a matter of fair dealing.

■ It appears to us also that Frontier's position is inconsistent. When it became obvious that the business operated by Kunkel was insolvent, Frontier obtained from him a chattel mortgage naming "Clifford D. Kunkel, individually and doing business as Kunkel's, Inc.," as mortgagor and signed simply as "C. D. Kunkel." The mortgage disclosed on its face that it was not executed in the name of or on behalf of a corporation, pretended or otherwise. It covered the equipment used in the station and was given to secure the indebtedness owing Frontier. Subsequently Fairfield, claiming to own such equipment, took possession of it. Thereupon Frontier, in a companion case, brought an action in replevin to recover possession of the property in order that its mortgage might be foreclosed. With respect to this proceeding the trial court found that the mortgage was

valid and entered judgment for Frontier. That judgment has now become final, no appeal having been taken by either of the parties. As a consequence, Frontier is in this position. In this appeal it is protesting the finding of the trial court that there was no partnership composed of the individual defendants. Yet, in the companion case—consolidated for trial with this case—it accepts the fruits of a judgment which carries with it an inherent finding by the trial court that Kunkel, as an individual, was Frontier's debtor and the owner of the property pledged to secure such debt. To permit Frontier to disavow such judgment to the extent of imposing liability upon Fairfield and Beach under the general rule advanced by Frontier, would be unconscionable. Imposition by the courts of the general rules relating to a defective corporation are subject to equitable principles, Loverin v. McLaughlin, 161 Ill. 417, 44 N.E. 99, 105; and we think the statement in the opinion of the Supreme Court of Iowa, Schumacher v. Sumner Telephone Co., 161 Iowa 326, 142 N.W.

1034, 1038, Ann.Cas.1916A, 201—a case presenting a much closer question than does the case here—is quite pertinent. There the court said:

"* * * To recover, appellant must bring himself clearly within the benefit of some established rule or principle of the law, and in this we think he has failed. There is very little shown to commend his demand against the appellees to equitable consideration, and the court ought not to go out of its way to discover grounds for compelling payment of his claim by parties who did not contract the debt, who had no knowledge of its existence until suit was begun thereon, who gave no authority to Robish to borrow money on their account, and where the lender did not part with his money relying upon their conduct or credit. * * *"

Finding no error in the proceedings, we affirm the judgment.

Affirmed.